**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JOSÉ RAMÓN SÁNCHEZ MORALES, in representation of JUAN FRANCISCO ARECHE MINAYA,

Petitioner,

v.

REBECCA GONZÁLEZ RAMOS, GARRET J. RIPA, DAVID VENTURELLA, MARKWAYNE MULLIN, TODD BLANCHE, HECTOR RAMÍREZ CARBÓ, and ROBERTO VAQUERO, all in their official capacities,

Respondents.

**Civ. No. 26-1530 (GMM)**

**OPINION AND ORDER**

Before the Court are three motions filed by José Ramón Sánchez Morales ("Mr. Sánchez") on behalf of Juan Francisco Areche Minaya ("Petitioner" or "Mr. Areche"): first, a *Petition for Writ of Habeas Corpus* (Docket No. 1); second, an *Urgent Motion Requesting Order Prohibiting the Transfer of Petitioner From Puerto Rico to Other Jurisdiction and that This Court Conduct a Bond Hearing Forthwith* ("*Urgent Motion*") (Docket No. 3); and third, *Emergency Motion for Temporary Restraining Order* ("TRO") (Docket No. 4).

Pursuant to the reasoning below, this Court **GRANTS** the TRO, **DENIES AS MOOT** the *Urgent Motion*, and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas Corpus* as to the remaining prayers for

relief. This Court hereby **ORDERS** that the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico and that he be granted a bond hearing conducted by an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR").

## I. BACKGROUND

Mr. Areche, a 49-year-old citizen of the Dominican Republic, entered Puerto Rico without inspection on or about 1998. (Docket Nos. 1 at 2, 6; 1-5 at 4-6). He has lived in the United States for more than twenty-eight years. (Docket No. 1 at 2, 6). Mr. Areche has two United States-citizen children for whom he financially provides: 20-year-old Darjeeling Areche Ciprian, and 12-year-old Jhon Areche Ciprian. (Docket Nos. 1 at 6; 4 at 2; 1-8; 1-9).

Mr. Areche's mother, Juana Minaya, is a United States citizen living in Puerto Rico and has twice filed a Petition for Alien Relative ("I-130 Form") seeking to establish a qualifying familial connection required for Mr. Areche to apply for permanent legal residence. *See* (Docket Nos. 1 at 6; 1-6; 1-7). The first I-130 Form was filed on August 25, 1992 and approved by the then-Immigration and Naturalization Service ("INS") on October 15, 1992. (Docket Nos. 1 at 6; 1-6). A second I-130 Form was filed on November 13, 2015 and approved by the United States Citizenship

and Immigration Services ("USCIS") on February 23, 2016. (Docket Nos. 1 at 6; 1-7). In the interim, Mr. Areche has lived in Puerto Rico without any reported criminal history and supports his mother, who has documented illnesses, and young children. (Docket Nos. 1 at 3, 6; 4 at 3; 1-10; 1-14).

On August 11, 2026, Mr. Areche was arrested by United States Immigration and Customs Enforcement ("ICE") agents during an enforcement operation. (Docket No. 1 at 1, 6). According to the habeas petition, seven[1] masked individuals approached Mr. Areche in San Juan, Puerto Rico at 10:00 a.m. while Mr. Areche was awaiting his friend Mr. Sanchez to retrieve electrical materials from Roger Electric for an employment. (Id.). Mr. Areche was "abruptly detained, without warning or sirens" and taken into immigration custody. (Id. at 1). Mr. Areche was detained in General Services Administration ("GSA") Guaynabo Immigration Center, from where he filed his habeas petition. (Id. at 3-4).

As pled, the following federal officials (collectively, "Government") authorize Mr. Areche's detention: Rebecca González Ramos, Special Agent in charge of Homeland Security Investigations in San Juan, Puerto Rico; Garrett J. Ripa, Miami Field Office

[1] The Court notes that the *Petition for Writ of Habeas Corpus* alternates between identifying eight, (Docket No. 1 at 1), or seven, (id. at 4), masked men who approached Mr. Areche. An affidavit provided by Mr. Sanchez affirms that seven is the appropriate number. *See* (Docket No. 1-3).

Director for ICE, who oversees Puerto Rico's Immigration and Removal Operations conducted at the ICE Office in GSA Guaynabo Detention Facility; David Venturella, Acting Director for U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; Héctor Ramírez Carbó, Acting United States District Attorney for the District of Puerto Rico; Todd Blanche, United States Attorney General; and Roberto Vaquero, Director of Field Operations for United States Customs and Border Patrol. (Id. at 4-5).

On August 17, 2026, Mr. Areche filed the instant *Petition for Writ of Habeas Corpus*. (Id.). Mr. Areche alleges his detention violates the Immigration and Nationality Act ("INA") and his procedural due process rights under the Fifth Amendment to the United States Constitution. (Id. at 9-15). Mr. Areche asks this Court to prevent his transfer to a facility outside of Puerto Rico and order him to receive a custody redetermination hearing ("bond hearing"). (Id. at 15).

To accompany Mr. Areche's habeas petition, Mr. Areche also filed an *Urgent Motion* and a TRO. (Docket Nos. 3, 4). There, Mr. Areche reiterates his request for an immediate injunction prohibiting the Government from transferring him out of this Court's jurisdiction and reaffirms his request for a bond hearing while his habeas is reviewed. *See* (id.).

As the *Urgent Motion* and the TRO make the same requests, and the TRO was filed subsequently, this Court will find the *Urgent Motion* as moot and analyze the request under the TRO framework. At this emergency juncture, the Court only addresses whether to issue a TRO.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) controls this Court's analysis. TROs can be issued with or without notice to the adverse parties.[3] Fed. R. Civ. P. 65(b)(1); Loc. Civ. R. 56.

Courts have interpreted the standard for issuing a TRO "the same as [those] for a preliminary injunction." Servicios Legales de P.R., Inc. v. Union Independiente de Trabajadores de Servicios Legales, 376 F. Supp. 3d 163, 166 (D.P.R. 2019) (internal citation omitted). To grant a TRO, a plaintiff must establish: (1) likelihood of success on the merits; (2) irreparable harm in the absence of immediate relief; (3) balance of equities favor relief; and (4) that relief is in the public interest. Peoples Fed. Sav.

[2] To the extent that this Court must review Petitioner's habeas petition – without deciding the merits of the habeas itself - to review Petitioner's prayer for a TRO, it has the jurisdiction to do so. *See* 28 U.S.C. § 2241(c)(3) (providing federal courts with jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States"). Nevertheless, this Court currently refrains from deciding the habeas. *See also* Aguilar v. U.S. Immigr. & Customs Enf't, 510 F.3d 1, 11 (1st Cir. 2007).

[3] Notice has been provided. *See* (Docket No. 6); Muñiz-Negrón v. Worthington Cylinder Corp., No. 17-CV-1985-RAM, 2021 WL 5313002, at *2 (D.P.R. Aug. 16, 2021) (considering electronic filings as sufficient notice).

Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). Petitioner bears the burden of meeting this test. Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

A TRO, like a preliminary injunction, is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank, 672 F.3d at 8-9 (*quoting* Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

TROs are granted within the district court's discretion. Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009). A decision is reversible, therefore, for abuse of discretion. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

## III. APPLICATION OF LAW

Mr. Areche requests this Court issue a TRO to prevent his transfer and receive a bond hearing. After reviewing the factors, the Court finds that immediate relief is warranted.

### A. Likelihood of Success on the Merits

To assess whether Petitioner is likely to succeed on the merits, the Court must first determine under what legal basis Mr. Areche is detained.

The INA affords the Government the authority to detain certain noncitizens. Importantly, the INA differentiates between mandatory detention and discretionary detention. Only the latter provides a

detainee with an entitlement to a bond hearing before an Immigration Judge. Two statutory provisions control this distinction: 8 U.S.C. §§ 1225 and 1226.

Section 1225 governs the detention of noncitizens who have not been "admitted" under the INA. As relevant here, Section 1225 provides for inspection of "[a]ll [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). An "applicant for admission" is defined as "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . ." Id. § 1225(a)(1). Notably, Section 1225(b)(2) marshals a mandatory detention scheme for noncitizens who are "applicant[s] for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a [for full removal proceedings]." Id. § 1225(b)(2)(A). Detention under Section 1225(b)(2) is generally mandatory, and the statute does not provide for bond hearings. *See* Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

Section 1226, by contrast, governs the "usual removal process" and affords noncitizens procedural protections not available in expedited removal proceedings. *See* Dep't of Homeland

Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Under Section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes: the Attorney General "may continue to detain the arrested [noncitizen]"; the Attorney General "may release the [noncitizen] on bond of at least $1,500"; or the Attorney General "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore establishes a discretionary detention framework for noncitizens. Guerrero Orellana v. Moniz, No. 25-2152, --- F.4th ----, ----, 2026 WL 2352042, at *1 (1st Cir. Aug. 13, 2026).

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change. *See, e.g.* Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022); Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (holding that an Immigration Judge at an initial bond hearing held under Section 1226(a) must consider whether (1) a noncitizen poses a danger to the community based on clear and convincing evidence, or (2) the noncitizen poses a flight risk based on a preponderance of the evidence).

Excepted from the general rule of discretionary detention

under Section 1226(a) are noncitizens involved in specific enumerated criminal activities. 8 U.S.C. § 1226(c)(1). Under Section 1226(c), in accordance with the Laken Riley Act enacted in January 2025, the Government is required to detain certain noncitizens who fall within the statute's criminal categories.

1. Discretionary detention applies as to Mr. Areche

Petitioner entered the country without authorization on or about 1998. However, he has been in contact with INS and USCIS and received two approved I-130 Form. (Docket Nos. 1-6; 1-7). Mr. Areche has since lived in the United States for nearly three decades without any reported criminal record. (Docket No. 1-14). Notwithstanding, Mr. Areche was arrested and detained by ICE officials on August 11, 2026. *See generally* (Docket No. 1).

Mr. Areche's longstanding residence in the United States before his detention strongly suggests that Section 1226(a), rather than Section 1225(b)(2), governs his detention. Given that Section 1226(a) governs detention for noncitizens who were "arrested and detained" while residing in the United States, interpreting Section 1225(b)(2) to apply to this same category would render it and amendments under the Laken Riley Act superfluous. *See* Guerrero-Orrellana, 2026 WL 2352042, at *11-15 (outlining statutory interpretation of Section 1226(a) and Section 1225(b)(2) that demonstrates that an arrest and detention of

noncitizens residing in the United States cannot fall under Section 1225(b)(2)(A)). Such an interpretation would also conflict with the INA's structural distinction between arriving applicants for admission and noncitizens already present in the United States and arrested within the country. Id.

Thus, at this preliminary stage, based on the allegations currently before the Court, Petitioner has demonstrated a substantial likelihood of establishing that Section 1226(a)'s discretionary detention framework governs his detention.

This interpretation aligns with the statutory distinction between arriving applicants for admission (that is, Section 1225) and noncitizens who are already present in the United States and are later arrested and detained (that is, Section 1226). Applying Section 1225(b)(2) to this factual posture would blur that distinction and render Section 1226(a) redundant - contrary to basic principles of statutory interpretation.

Nor, with the information that this Court has before it, does Mr. Areche have any criminal record that would otherwise subject him to the mandatory detention exception outlined under Section 1226(c). (Docket No. 1-14); *see also* Hernandez-Lara, 10 F.4th at 26-27; Rodriguez-Diaz, 53 F.4th at 1196.

Accordingly, for purposes of the present motion only, the Court concludes that Petitioner has demonstrated a substantial

likelihood that Section 1226(a) governs his detention.

2. Petitioner is likely to succeed on the merits

Where removal and detention of a noncitizen is discretionary, rather than mandatory, Section 1226(a) entitles a noncitizen to: an initial bond hearing before a neutral decisionmaker; the opportunity to be represented by counsel and to present evidence; the right to appeal; and the right to seek a new hearing when circumstances materially change. Rodriguez-Diaz, 53 F.4th at 1202; *see also* Doe v. Tompkins, 11 F.4th 1, 2 (1st Cir. 2021).

From the record before this Court, (Docket No. 1 at 11), it appears that Petitioner did not receive a bond hearing because of the immigration court's deference to Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). This administrative decision found that Immigration Judges do not have jurisdiction over custody redeterminations for noncitizens who were present in the United States without admission. Id. at 220-28.

This Court, however, is not bound by BIA interpretations that conflict with the statutory text or controlling circuit precedent. *See* Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400 (2024) (noting "agencies have no special competence in resolving statutory ambiguities," but "[c]ourts do"). Indeed, it is bound by the First Circuit, which has spoken clearly on the matter and rejected Matter of Yajure Hurtado's interpretation. *See* Guerrero-

Orrellana, 2026 WL 2352042, at *11. To be sure, the First Circuit joins a majority of the courts of appeals that have considered this issue in deciding there is a right to a bond hearing under circumstances akin to those of Petitioner. *See, e.g.*, Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61, 95 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 734 (6th Cir. 2026); Rodriguez Vazquez v. Bostock, No. 25-6842, --- F.4th ----, ----, 2026 WL 2196424, at *15 (9th Cir. July 30, 2026); Cirrus Rojas v. Olson, No. 25-3127, --- F.4th ----, ----, 2026 WL 2198315, at *8 (7th Cir. July 30, 2026).

Under Guerrero-Orellana, this Court is bound by this reasoning. As such, Petitioner has demonstrated a substantial likelihood of success on the merits of his claim and is entitled to a bond hearing.

B. Irreparable Harm

Next, irreparable harm. When evaluating the expedition of equitable relief, "[an] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (*quoting* Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)).

The "irremediable" injury would be threefold for Mr. Areche:

detention; removal from this Court's jurisdiction pending Mr. Areche's habeas corpus proceedings;[4] and the imminent consequences that such removal would have on his person and his rights.

The harm posed in transfer without a bond hearing is substantial. Mr. Areche faces a prolonged period of detention, separating him from his mother and children - depriving them of family integrity and medical and financial support, as well as divesting Mr. Areche of his liberty. Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment . . . lies at the heart of the liberty that the [Fifth Amendment Due Process] Clause protects.").

Courts possess authority under the All Writs Act, 28 U.S.C.

[4] Were Mr. Areche to be transferred before the issuance of this *Opinion and Order*, this Court would still retain jurisdiction. Jurisdiction under 28 U.S.C. § 2241 is assessed at the time the petition is filed, and 28 U.S.C. § 1631 governs jurisdiction after transfer. *See* Rumsfeld v. Padilla, 542 U.S. 426, 441, 447 (2004). Petitioner was detained within this District when the Petition was filed on August 17, 2026. (Docket No. 1). That jurisdiction, once properly acquired, is not defeated by a respondent's subsequent transfer of the petitioner to another district. *See* Ex parte Endo, 323 U.S. 283, 304-05 (1944) (rejecting mootness after transfer where a respondent capable of effecting the petitioner's release remained subject to the court's jurisdiction); Rumsfeld, 542 U.S. at 441 (distinguishing Endo on the ground that there was no indication the transfer at issue was an attempt to manipulate jurisdiction). Transferring Petitioner before this *Opinion and Order* is issued implicate the concern recognized in Endo - that a post-filing transfer should not deprive a court of its ability to resolve a properly filed habeas petition. *See also* Ozturk v. Hyde, 136 F.4th 382, 387 (2nd Cir. 2025); Ozturk v. Trump, No. 25-CV-00374, 2025 WL 1318154 (D. Vt. Apr. 18, 2025) (retaining jurisdiction and ordering return of a habeas petitioner transferred out of the district where the petition was filed). Under these circumstances, the Court finds that it retains jurisdiction over the Petition and over the individuals responsible for Petitioner's custody for purposes of preserving its jurisdiction and effectuating the relief previously ordered.

§ 1651(a), to preserve their jurisdiction while a habeas petition remains pending. *See* Nken v. Holder, 556 U.S. 418, 426 (2009). Maintaining Petitioner within the District of Puerto Rico preserves the status quo and ensures that the Court may provide meaningful relief should the petition ultimately succeed.

C. Balance of Equities and Public Interest

The remaining preliminary injunction factors - the balance of equities and the public interest - "merge when the Government is the opposing party." Id. at 435.

The balance of equities favors Petitioner where he has demonstrated a substantial likelihood that the Government's interpretation of the detention statutes is unlikely to prevail and that continued detention without access to the procedures afforded under Section 1226(a) may be unlawful.

The Court recognizes the Government's substantial interest in enforcing the immigration laws. At the same time, the public has a significant interest in ensuring that detention decisions are implemented in accordance with the statutory framework established by Congress and the procedural protections required by law. Neighborhood Ass'n of The Back Bay, Inc. v. Fed. Transit Admin., 407 F. Supp. 2d 323, 343 (D. Mass. 2005), aff'd, 463 F.3d 50 (1st Cir. 2006).

## IV. CONCLUSION

Based on the present record, Petitioner has demonstrated a likelihood of success on the merits, irreparable harm if interim relief is denied, and that the balance of equities and public interest favor preserving the status quo pending further proceedings. Accordingly, this Court **GRANTS** the TRO, **DENIES** as moot the *Urgent Motion* and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas Corpus* as to the remaining prayers for relief.

The Court **ORDERS** that Petitioner executes summons on Respondents on or by August 28, 2026.

The Court further **ORDERS** the United States, its agencies, officers, employees, and all persons acting on their behalf shall not transfer Petitioner outside the District of Puerto Rico.

The Court further **ORDERS** that Petitioner be granted a bond hearing before an Immigration Judge no later than August 25, 2026 at 5:00 P.M. The Government shall inform on or by August 26, 2026 at 5:00 P.M. whether such hearing has been held and its outcome. The Government must also file a pleading responsive to Petitioner's *Petition for Writ of Habeas Corpus* on or by August 31, 2026 at 5:00 P.M.

This *Opinion and Order* grants only temporary injunctive relief and does not adjudicate the merits of the *Petition for Writ of Habeas Corpus*.

This Court retains jurisdiction to enforce its decision.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on August 18, 2026.

/s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE